UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SAMUEL RODRIGUEZ REYNA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-54 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

# MEMORANDUM AND RECOMMENDATION

Petitioner Samuel Rodriguez Reyna is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Ramsey 1 Unit in Rosharon, Texas. Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on February 20, 2014.[1] The underlying conviction which is the subject of the petition is a 2008 Nueces County conviction for murder. Petitioner claims that his constitutional rights were violated during the trial proceedings. Respondent filed a motion for summary judgment on June 18, 2014 to which Petitioner responded on October 17, 2014 (D.E. 30, 39). For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Application for Habeas Corpus Relief be denied. It is further recommended that any request for a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on February 20, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

# JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is proper in this court because Petitioner was convicted in Nueces County, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

# BACKGROUND

**A. Factual Background**

The victim, Paul Licoscos, died from multiple stab wounds. He had four stab wounds in his front chest area and four in his back, as well as five slash wounds around his head, neck and back. The wounds were made by a sharp-edged weapon like a knife (14 RR 256-257, 260; D.E. 23-37 at 66-67, 70).

Kimberly Powell testified that late in the evening on July 25, 2006[2] she gathered with some other people, all of whom were homeless, in a vacant lot to drink beer (13 RR 129-131, 144; D.E. 23-33 at 52-54, 67). Petitioner was there, along with Ricardo Reyes, Debra Oscar, and Licoscos (13 RR 131-132, 137-138; 14 RR 106; D.E. 23-33 at 54-55, 60-61; D.E. 23-36 at 11). At one point, a black man named Jasper wandered through the group but did not stay. A woman, Michelle Robertson, later joined the group (13 RR 138; D.E. 23-33 at 61).

Powell testified that she was sober, but everyone else was drunk (13 RR 139; D.E. 23-33 at 62). Debra Oscar was passed out on the ground and Powell tried to get Licoscos

---

[2] Powell testified that it was late in the evening of July 25, 2006, but other records show that the murder occurred in the early morning hours that day. Petitioner was picked up later in the morning of July 25, 2006.

to take Oscar somewhere else because Powell feared for her safety. Oscar refused to leave so Powell put a duffel bag under her head for a pillow (13 RR 140-141; D.E. 23-33 at 63-64). Powell left to walk to the store and when she came back, Oscar's pants were down around her ankles. Powell pulled them up and covered Oscar with a towel (13 RR 144; D.E. 23-33 at 67).

At one point, Petitioner told Licoscos that he needed to "take care of his woman" because she was drunk and vulnerable. The two began to fight and Liscosos was getting the better of Petitioner. Powell and Michelle Robertson separated them and they shook hands (13 RR 145, 14 RR 210; D.E. 23-33 at 68, D.E. 23-37 at 20). Powell left again and when she returned, Petitioner and Licoscos were staring at each other and Powell tried to get Petitioner to leave. Powell turned around and moved out of the way and when she looked back, Petitioner was stabbing Licoscos in the back. Powell could not see the murder weapon, although she later told police that Petitioner was using scissors to stab Licoscos. (13 RR 146-147; D.E. 23-33 at 69-70). Powell grabbed Petitioner by his belt and tried to pull him off Licoscos (13 RR. 147-148; D.E. 23-33 at 70-71).

Powell ran to find someone to call an ambulance. She did not run off because she was afraid of Petitioner, although it did occur to her that he might have stabbed her in an effort to get to Licoscos. Petitioner began yelling and ran off in the opposite direction (13 RR 150-152; D.E. 23-33 at 73-75).

When Powell was contacted by police she told them that the person who killed Licoscos was a black man who spoke Spanish and was wearing a Lakers' jersey. She repeated the description to various law enforcement officers. At trial she testified that

she lied about the identity of the murderer because she didn't want to be further involved and she "just wanted everything to go away." (13 RR 153-155; D.E. 22-23 at 76-78). Powell also told police that the murder weapon was a pair of scissors (13 RR 178; D.E. 23-34 at 2).

Later, after someone else had identified Petitioner as the murderer, Powell was shown a photo lineup and although she was ready to point to a black man, Petitioner's photo appeared and she identified him as the murderer (13 RR. 156; D.E. 22-23 at 79). At that point Powell told the officers that earlier she had intentionally misidentified the murderer because she feared for her husband's safety and worried that Petitioner might retaliate against them (13 RR 157-158; D.E. 23-33 at 80-81).

Michelle Robertson testified that she was on her way to get high on crack when she stopped at the gathering(14 RR 203; D.E. 23-37 at 13). Petitioner and Licoscos began to fight after Petitioner told Licoscos to take care of his passed-out girlfriend and Petitioner stabbed Licoscos six or seven times with a small knife (14 RR 208-209; D.E. 23-37 at 18-19). Robertson's account of the details and chronology of the fight differed somewhat from Powell's account, but Robertson identified Petitioner as the murderer (14 RR 206-213; D.E. 23-3 at 16-23). Robertson also testified that she had been in a drug treatment facility for the previous five months prior to testifying (14 RR 201-202; D.E. 23-37 at 11-12).

Robertson described Ricardo Reyes as stupefied and said he was "just sittin' there, not really doing anything, just looking stupid." (14 R 206; D.E. 23-37 at 16). Powell

described Reyes as "wasted." (13 RR 139; D.E. 23-33 at 62). Robertson testified that Oscar was "passed out." (14 RR 207; D.E. 23-37 at 17).

Later in the morning of July 25, 2006 police officers were looking for Petitioner, who had been named as a suspect in the murder (14 RR 5-6; D.E. 23-35 at 10-11). An officer saw Petitioner standing on a street corner and noted that he matched the description of the suspect. The officer also noted that Petitioner had blood on his shirt and a cut on his right pinkie finger. Petitioner identified himself and told the officer that he had heard police were looking for him. (14 RR 6-7; D.E. 23-25 at 11-12). The officer asked Petitioner if he had any weapons and Petitioner pulled a black folding knife out of his pocket. The officer grabbed Petitioner's hand, removed the knife and placed Petitioner in his patrol car (14 RR 8-9, 11; D.E. 23-35 at 13-14, 16). A detective arrived at the scene and questioned Petitioner, who told him he had "cut someone." (14 RR 9-10, 22-23; D.E. 23-35 at 14-15, 27-28). The first officer placed the knife in a bag and gave it to the detective (14 RR 10-11; D.E. 23-35 at 15-16). Petitioner was taken to the police station (14 RR 28; D.E. 23-35 at 33).

The State's DNA expert testified that traces of blood found on the knife and on Petitioner's belt were consistent with Liscoscos's DNA profile. Blood found on Petitioner's shoes and one of his socks appeared to be a mixture of Petitioner's and Licoscos's blood (14 RR 145, 154-157; D.E. 23-36 at 50, 59-62). Nail clippings taken from Licoscos's hands showed a mixture of his blood and Petitioner's blood (14 RR 178-179; D.E. 23-36 at 83-84). Blood found on Licoscos's belt was consistent with a mixture

of Licoscos's blood and the blood of an unidentified person (14 RR 193; D.E. 23-37 at 3). There were no traces of Licoscos's blood on Petitioner's t-shirt, jeans or boxer shorts (14 RR 194; D.E. 23-37 at 4).

### B. Procedural Background

Petitioner was tried by a jury and convicted of murder on February 7, 2008 (3 CR 497; D.E. 23-11 at 22). He filed a direct appeal and the Thirteenth Court of Appeals affirmed his conviction on August 4, 2011. *Reyna v. State*, No. 13-08-114-CR, 2011 WL 3366383 (Tex. App. –Corpus Christi 2011, pet. ref'd)(not designated for publication) (located herein at D.E. 22-35). Petitioner filed a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals but it was struck on March 7, 2012 because it exceeded fifteen pages. *Reyna v. State*, No. PD-1577-1, 2012 WL 836234 (Tex.Crim. App. 2012). Petitioner filed a redrawn PDR and it was refused on August 22, 2012. *Reyna v. State*, No. PD-1577-11 (Tex. Crim. App. 2012)(D.E. 22-53).

Petitioner filed an application for habeas corpus relief in state court on August 14, 2013. *Ex Parte Reyna*, WR-20,146-06 at 2-102 (D.E. 23-48 at 7-102; D.E. 23-49 at 1-5). The trial court entered findings of fact and conclusions of law on September 12, 2013. *Id.* at 152-153 (D.E. 23-49 at 55-56). On November 6, 2013 the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. *Id.* at "Action Taken" page (D.E. 23-48 at 2).

Petitioner filed his application for habeas relief in this court on February 20, 2014 and makes the following arguments: (1) He did not receive a fair trial because two of the state's witnesses, Powell and Robertson, committed perjury and were otherwise

unreliable; (2) Police officers who testified committed perjury regarding whether Petitioner was under arrest when he gave a statement to police on July 25, 2006; (3) Two people who were present at the murder did not appear at the trial and (4) Petitioner was denied an examining hearing prior to indictment.

In his motion for summary judgment, Respondent argues that Petitioner's federal habeas application is time-barred and otherwise without merit. Respondent concedes that the petition is not second or successive but reserves the right to raise exhaustion and procedural default defenses should Petitioner disagree with the Respondent's construction of the claims raised.

In his response to the motion for summary judgment, Petitioner argues that his cause of action is not time barred because the limitations period did not begin to run until the mandate issued in his case on November 27, 2012. In addition, he reiterates his argument that his constitutional rights were violated in a number of ways during the trial. (D.E. 39 at 27-28).

## APPLICABLE LAW

### A. Statute of Limitations

Respondent argues that petitioner's application for habeas corpus was filed outside the one-year limitation period set by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244. Petitioner filed his current application for writ of habeas corpus after the effective date of the AEDPA and so is subject to its provisions. *Lindh v. Murphy*, 521 U.S. 320 (1997).

Petitioner's conviction became final on November 20, 2012, ninety days after his PDR was refused by the Texas Court of Criminal Appeals and the time expired for filing a writ of certiorari with the United States Supreme Court. SUP. CT. R. 13.1. He had one year from that date, or until November 20, 2013, to file his petition. He did not file it until February 20, 2014, three months too late.

Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2). *See also Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) (petitioner entitled to equitable tolling from the time he filed his state habeas application

until it was denied). Petitioner filed his state application on August 14, 2013 and it was pending until November 6, 2013, a period of 85 days. Adding 85 days to the one-year deadline extended it to February 13, 2014. Because Petitioner did not file his federal application until February 20, 2014, it was filed outside the statute of limitations.

Petitioner argues that the statute of limitations did not begin to run until the mandate was issued by the Thirteenth Court of Appeals. However, in *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010), the Fifth Circuit held that under the AEDPA, a state conviction for a petitioner who does not seek a writ of certiorari from the United States Supreme Court becomes final when the time for seeking further direct review expires and not when the mandate issues in his case. Petitioner's argument to the contrary is without merit.

Nor has Petitioner shown that he is entitled to equitable tolling. "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *United States v. Petty*, 530 F.3d 361, 364 (5th Cir. 2008)(quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)(per curiam)). The AEDPA one-year limitations period is not jurisdictional and is subject to equitable tolling at the discretion of the district court. *Id.* (citing *United States v. Wynn*, 292 F.3d 226, 229-230 (5th Cir. 2002)).

Equitable tolling is permissible only in "rare and exceptional" circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A prisoner proceeding *pro se* is not a "rare and exceptional" circumstance because it is typical of those bringing § 2254 claims. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. Excusable neglect does not support equitable tolling. *Coleman*, 184 F.3d 398, 402 (5th Cir. 1999)(citations omitted). A petitioner seeking to have the AEDPA limitations period tolled must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way of his timely filing his habeas petition. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Petitioner has offered neither argument nor evidence to show that he is entitled to equitable tolling of the statute of limitations and nothing in the record indicates that the deadline should be extended. Accordingly, his federal habeas application is barred by the statute of limitations.

**B. Merits**

Although it is recommended that Petitioner's claim be dismissed as time-barred, in the alternative the merits will be addressed.

**(1) Standard of Review**

Under AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

8 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S.Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings . . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

**(2) Reliability of Witness Testimony**

**(a) Kimberly Powell**

Petitioner argues that Powell lied when she identified him as the murderer during her testimony and that she was otherwise unreliable as a witness because she was

intoxicated and also was suffering from a lack of sleep the night of the murder.  The jury heard from several law enforcement officers and from Powell that she initially said a black man had stabbed Licoscos.  She testified that she purposefully misidentified the murderer because she was afraid of Petitioner and also because she did not want to be involved in the trial and hoped the incident would "go away."  The jury also heard that Powell was drinking prior to the stabbing and Petitioner's attorney raised the issue that Powell had not been charged with filing a false police report.

In order for an allegation of perjured testimony to constitute a due process violation, a petitioner must show that the prosecution knowingly presented materially false evidence to the jury.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).  Contradictory testimony at trial merely establishes a credibility issue for the jury.  *Id.*  On habeas review, a federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts.  *Wiggins v. Whitley*, 30 F.3d 1401 (5th Cir. 1994)(per curiam).

The jury in this case heard that Powell had changed her story regarding the identity of the murderer and was free to determine whether her later identification of Petitioner was a lie. The jury also heard that Powell had been drinking and that she was not charged with possible crimes, with the implication being that the State forewent charging her in exchange for her testimony against Petitioner.  The Thirteenth Court of Appeals found that the jury reasonably could have chosen to disbelieve Powell's statements to the police that the suspect was a black man who used scissors to stab the victim and to believe her testimony at trial that she had seen Petitioner stab Licoscos.

Petitioner has not shown that this conclusion was unreasonable or contrary to Supreme Court precedent under the AEDPA standard.

In addition, even if Petitioner's allegation of perjury were accepted as true, he has presented no evidence that the prosecution knew the testimony to be false. *Id.* Without doing so, he cannot make out a claim that his due process rights were violated.

**(b) Michelle Robertson**

Witness Michelle Robertson also identified Petitioner as the person who stabbed Licoscos. Petitioner claims that Robertson was lying and that she was not a credible witness because she was a convicted felon and drug addict and was transferred from a treatment facility to testify. In addition, she was intoxicated on the night of the murder.

The jury heard all of the information about Robertson and chose to credit her testimony. As discussed above, the credibility of witnesses is the province of the jury and is not subject to review by a federal habeas court. The state habeas court found that there was no evidence in the record to show that Robertson was lying and Petitioner has not shown that this finding was unreasonable under the AEDPA standard.

**(c) Police Officers**

Petitioner claims that two law enforcement officers lied when they said that Petitioner was not under arrest at the time they talked to him on the morning after the murder. He presumably makes this argument to support a contention that any statements he made to the officers prior to being officially arrested should have been suppressed. This issue was the subject of a pre-trial hearing on a motion to suppress which the court overruled (11 RR 15-58; D.E. 23-28 at 17-60). The issue was raised again at trial and the

court allowed limited portions of a video-taped statement of Petitioner to be shown to the jury. In addition, the jury heard the testimony of an officer regarding whether Petitioner had been under arrest when he made certain statements (14 RR 28-40; D.E. 23-35 at 33-45).

The state habeas court found no evidence in the record that the police officers were lying and Petitioner has failed to meet his burden under AEDPA that this conclusion was unreasonable. Based on the above, summary judgment should be entered for Respondent on Petitioner's allegations that his conviction was based on perjured testimony.

**(3) Witnesses Not Called to Testify**

Petitioner argues that his right to due process was violated because two of the people present on the night of the murder, Debra Oscar and Ricardo Reyes, were not called to testify at the trial. During the investigation of the murder, Oscar told police that the last thing she remembered before passing out was that she was drinking beer with Licoscos and a man she knew as "Sam" and she identified Petitioner from a photo lineup. The police relied on Oscar's statement to show probable cause for arresting Petitioner (Affidavit/Complaint, 2 CR 352; D.E. 23-8 at 19). He argues that because he never had an opportunity to cross-examine Oscar or Reyes, he could not ask them questions concerning the crime scene or compare their testimony to that of Powell and Robertson for inconsistencies. He argues that their testimony would have been exculpatory but the State did not pursue them as it did Robertson.

Petitioner raised this issue on direct appeal, and the Thirteenth Court of Appeals noted that Petitioner's attorney did not object to the State's failure to call either Oscar or Reyes as witnesses and thus had not preserved the issue for appeal (D.E. 22-35 at 12). Nevertheless, the court went on to find that the failure of the State to call Oscar or Reyes to testify was not unreasonable, given other testimony that Oscar had passed out after drinking and that Reyes was intoxicated to the point of not knowing what was going on. The court concluded that neither witness would have been capable of testifying about Licoscos's murder and that the failure to call them could not have constituted suppression of the facts or secretion of witnesses under Tex. Code Crim. Pro. Ann. art. 2.01[3] and 2.03(b).[4]

Petitioner cites *Davis v. Washington*, 547 U.S. 813, 821 (2006), where the Supreme Court noted that the Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. *Davis* in turn cites *Washington v. Crawford*, 541 U.S. 35, 53-54 (2004), where the Court held that the provision bars "'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify,

---

[3] "…It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused." Tex. Code Crim. Pro. Ann. art 2.01.

[4] It is the duty of . . . the attorney representing the state and all peace officers to conduct themselves as to insure a fair trial for both the state and the defendant [and] not impair the presumption of innocence." Tex. Code Crim. Pro. Ann. art. 2.03.

and the defendant had had a prior opportunity for cross-examination.'" *Davis*, 547 U.S. at 821.

In this case, the State did not submit testimonial statements of either Oscar or Reyes at trial and Petitioner does not claim otherwise. Rather, Petitioner argues that because Oscar's statement to a police detective that she was with Petitioner prior to passing out was used as part of the detective's affidavit of probable cause to arrest him, he should have been allowed to cross-examine her. However, Petitioner has cited to no Supreme Court precedent that the Confrontation Clause encompasses the right to cross-examine a person at trial who gave a statement used to obtain an arrest warrant but whose statement was not admitted at trial, and no such authority was found. Accordingly, Petitioner cannot prevail on his argument that the state habeas court's decision that failure to produce Oscar or Reyes for trial did not violate Petitioner's constitutional rights was contrary to Supreme Court precedent.

### (4) Right to an Examining Trial

After Petitioner was arrested but before he was indicted his attorney requested an examining trial but the request was denied. Petitioner claims that the denial violated his right to due process. An examining trial has three purposes: (1) to determine whether there exists sufficient evidence of guilt to hold a person accused of a crime; (2) to determine whether bail should be allowed and if so, the amount of bail; and (3) to perpetuate the testimony of witnesses, including any voluntary statement by the accused. *State ex rel. Holmes v. Salinas*, 784 S.W. 2d 421, 424 (Tex. Crim. App. 1990)(en banc). The right to a preliminary hearing is terminated by the return of an indictment. *Id.*; Tex.

Code Crim. Pro. art. 16.01. Federal law does not guarantee the right to an examining trial prior to an indictment. *State of Texas v. Reimer,* 678 F.2d 1232, 1233 (5th Cir. 1982). *See also Richardson v. State of Texas*, 425 F.2d 1372, 1373 (5th Cir. 1970)(An examining trial is a creation of state law, the denial of which presents no substantial federal question.)

Petitioner had no constitutional right to an examining trial. Accordingly, his claim that the denial of the examining trial violated his constitutional rights is without merit and summary judgment should be entered for respondent on this issue.

## C. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604 (emphasis added).

In Petitioner's case, it is recommended that his claims be dismissed on procedural grounds and, in the alternative, on the merits. Reasonable jurists would not find it debatable that Petitioner's claims are time-barred. Nor would jurists of reason debate denial of habeas relief to Petitioner on the merits. Therefore it is further recommended that any request for a COA be denied because he has not made the necessary showing for issuance of a COA on either ground.

## **RECOMMENDATION**

It is respectfully recommended that Respondent's motion for summary judgment (D.E. 30) be granted. Petitioner's application for habeas corpus relief should be dismissed

as time-barred and, in the alternative, denied on the merits. It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 3rd day of December, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).